

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| MARY JO BRANDIS, | * | CIV 07-3007 |
| | * | |
| Plaintiff, | * | |
| | * | |
| -vs- | * | ORDER AND OPINION |
| | * | |
| FARMERS ALLIANCE MUTUAL | * | |
| INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

There are motions pending. This opinion and order will deal with the defendant's motion (Doc. 57) for a partial summary judgment as to the claims of the plaintiff for medical payments and disability benefits under the policy issued by defendant to plaintiff. It will also deal with the defendant's motion (Doc. 58) seeking a partial summary judgment as to the claims of plaintiff for bad faith on the part of plaintiff's insurance company, the defendant, and a motion (Doc. 64) seeking to strike the report of plaintiff's expert and to prevent plaintiff's designated expert from testifying at the trial.

It will also deal with the plaintiff's motion for summary judgment as to the medical and disability benefits (Doc. 65).

The motions are all somewhat ambiguous since they are all phrased to the effect that the party "will move" at a hearing to be scheduled by the court. This sounds more like state court practice. In federal court, I do not routinely schedule hearings to deal with written motions. Rather, the motion is filed, the opposing party answers, the movant replies, and the motion is decided. I will treat all these as motions filed to be decided by the court at this time. Counsel should read D.S.D.LR 7.1.

The plaintiff was involved in a motor vehicle accident in 2001 when her vehicle was struck from behind by another vehicle. Plaintiff brought a lawsuit against the other

driver and the lawsuit was settled for the policy limits of $25,000.00.  Plaintiff then attempted to settle with her own carrier, under the underinsured motorist coverage which plaintiff had purchased from the defendant.  Plaintiff also has sought and seeks in this action to recover for medical payments and for disability benefits, coverage for which plaintiff had paid to obtain from the defendant.

The court will first address the motion at Doc. 57.  Defendant claims that plaintiff failed to make a specific claim for medical payments or disability benefits or both under the policy prior to releasing the third party tortfeasor.  Whether she did or not, the court rejects any contention by the defendant to the effect that its insured is legally required to claim each and every specific benefit under the policy prior to releasing (with the written consent of the defendant insuror) all claims against the third party tortfeasor.  It is very frankly an "off the wall" contention that an insured or the attorney for the insured is as a matter of law required to explain to the insuror what the policy says and what benefits may be available under the policy.  Who would know better than the defendant what its own policy provides?  If the defendant had any desire to pursue anything by way of subrogation against the third party tortfeasor, a jury may well find that defendant's representatives should have said so.  They said nothing.  A jury may well find that the defendant's agents attempted to lay a trap for its insured and her attorney.  It did so after having carefully investigated any possibility for a subrogation recovery.  Defendant and its representatives knew that the third party tortfeasor's limits of liability were $25,000.00 and that such sum was being tendered by the insurance carrier for the third party tortfeasor in exchange for a complete release of all claims.  It investigated the matter (as would anyone before waiving rights as to subrogation) and knew that the tortfeasor was "judgment proof" and without any assets which could be reached in connection with a subrogation claim.  A notation of the defendant on December 23, 2005, states: "No assets found for clmt.  I would not recommend a substitution of benefits in this case."  The claimant to which reference is made would be the third party tortfeasor.  The defendant

never had any intention of pursuing any subrogation claim.  Nor would any prudent attorney pursue such a claim under the facts.  There was no blood available from the turnip.  The defendant had the opportunity properly extended to it to substitute its payment of $25,000.00 and then undertake the defense of the third party tortfeasor.  It declined to do so.

There is no question that, if no underinsured benefits are due under the policy from defendant to plaintiff, medical payment benefits and disability benefits are then available, assuming, of course, that there is a factual basis for such benefits.  Whether there is or was a factual basis for such benefits will ultimately be determined by the jury.

Defendant has taken the position that it owes no underinsured benefits, has made no payments thereunder and has offered nothing by way of such benefits.  With this position, a jury may well find that it is illogical for the defendant to argue that it has no possible legal responsibility for medical payments and for disability benefits.

There is no question that plaintiff, immediately after the accident, reported the accident to her local insurance agent who sold her the policy issued by defendant.  This same local agent had sold a policy of liability insurance to the third party tortfeasor.  The agent apparently gave no notice to the defendant as to the accident and possible claims arising under the policy.  That is the "problem" of the defendant and its agent, not the problem of the plaintiff.

Common sense tells us that any insurance agent having sold a policy is required by the agency agreement to promptly report accidents involving its insureds to the insurance company as soon as the insured reports the accident to the agent.  At a minimum, a genuine issue of material fact exists as to such obligation.

It is clear from the record that, prior to delivering the written release of all claims to the third party tortfeasor, the plaintiff's attorney put defendant on notice that the claims of plaintiff included claims for medical pay benefits, disability benefits, and underinsured motorist benefits.  At a minimum, a genuine issue of material fact exists as to such

question.  The expert witness for the defendant has simply assumed that no such notice was given and there is no basis to make such assumption.

There is no need to spend additional time as to this motion.  It is clearly without any legal merit.

I will turn next to the motion at Doc. 58.  Each side has the assistance of experts who have expressed opinions on the questions of bad faith claim handling.  These are hotly contested questions.  It cannot be said that there are no genuine issues of material fact as to such questions.  It is not the function of this court to prevent the finder of fact from dealing with such issues.  The court has already determined that the defendant had no legal basis to decide, in effect, that the plaintiff had prevented a recovery of subrogation benefits and was therefore estopped from any recovery of benefits under the policy (other than the claims for underinsured motorist benefits).  A jury could decide that such constituted bad faith, entitling the plaintiff to recover damages.  This motion should also be denied.

I will turn next to the motion (Doc. 64) dealing with plaintiff's expert witness. Defendant urges the court to find that the testimony would not be reliable and would not be trustworthy.  Those are normally questions to be resolved by the jury.  Defendant argues that plaintiff's proposed witness, Rob Dietz, has not exhibited the "necessary specialized knowledge of the Farmers Alliance policy or the circumstances of this claim." What the policy says and what the legal issues are as to the policy are matters for the court to decide, not any expert witness.  No expert witness or party will be instructing the jury as to what the law is.  That is the function of the court.  As to what the "circumstances of this claim" might be remains to be seen and will be based upon evidence to be introduced at the trial.  All we have at this point are the claims of the parties and those claims are not evidence.

Defendant again claims that the proposed witness is not "familiar with the policy provisions."  That is immaterial.  Defendant claims that the proposed witness is not

familiar with "any applicable code of conduct or other industry standard." There is no code of conduct as to claimed bad faith. That will be decided by the jury under the Federal Rules of Evidence and the legal rulings of the court. Mr. Dietz claims to be familiar with industry standards and that will be subject to cross examination and any evidence that may be introduced by the defendant. Defendant claims that Mr. Dietz, in his report, has made "dogmatic assertions and proclamations" and that sounds like nothing more than the typical expert witness.

Finally, defendant claims that it would be improper for an expert witness to testify that the conduct of the defendant indicates the existence of actual malice. That may well be a correct statement of the law under the Rules of Evidence but the court's response, very frankly, is "so what." I fully realize that we have gotten away from the long standing rule preventing the expert witness from expressing an opinion as to the ultimate issue. I am mindful of the fact that no witness should be invading the province of the jury. I do not allow expert witnesses to take over the trial and run amok.

The motion to disqualify should be denied. The court is satisfied that the requirements of Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), and its progeny have been met in this case.

Turning to the motion of plaintiff for a partial summary judgment, such motion should be denied, both from a procedural standpoint and on the merits.

It is obvious that the attorney for the plaintiff has not read the standard operating procedures of this court; nor has he followed them. He has submitted entire depositions, expecting me to wade through them, word by word and page by page. Had the attorney read the procedures, he would have noted the following: "13) If you are filing a motion for summary judgment or opposing one, do not submit entire deposition transcripts. Submit only pages and portions of documents that are relevant with the relevant material highlighted. As one circuit has said: "Judges are not like pigs, hunting for truffles buried in briefs." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (quoted with

approval in <u>United States v. Gurley</u>, 434 F.3d 1064 (8th Cir. 2006). This rule applies to any other motions as well."

The attorney for the plaintiff has also violated at least the spirit of D.S.D.LR 7.3.

There are genuine issues of material facts and the motions for summary judgment should be denied.

Now, therefore,

IT IS ORDERED, as follows:

1) The motion for a partial summary judgment (Doc. 57) is denied.

2) The motion for a partial summary judgment (Doc. 58) is denied.

3) The motion (Doc. 64) to strike the report of plaintiff's expert, Rob Dietz, and to exclude his testimony at trial is denied.

4) The motion (Doc. 65) of the plaintiff for a partial summary judgment is denied.

5) The attorney for the plaintiff shall promptly obtain a copy of the court's standard operating procedures, read the same, and file in this action an affidavit that he has done so.

Dated this 18th day of December, 2008.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY:_____
                        DEPUTY
        (SEAL)

6